The People of Puerto Rico, Plaintiff and Appellee, *v.* Noel Busigó Quevedo, Defendant and Appellant, (3 cases).

Nos. 10435, 10436 and 10437. Argued July 3, 1944.—Decided July 24, 1944.

*Ramos Antonini & Gutiérrez Franqui*, and *Santos P. Amadeo* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal)*, and *Luis Negrón Fernández, Assistant Prosecuting Attorney*, for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The appellant was charged with murder in the first degree and with violations of the Act requiring the declaration of arms and prohibiting the carrying of same. The last two cases were submitted upon the evidence introduced in the first. Upon the first charge the jury brought a verdict of guilty of murder in the second degree, and upon the other two charges the judge, on the evidence introduced in the first, found the defendant guilty. He appealed the three cases to this court, and his appeals have been consolidated.

The appellant complains (1) about certain comments made by the trial judge in the presence of persons who later were designated jurors, and who were then in court; (2) the refusal of the judge to grant a continuance so that the defendant's lawyer could properly prepare his defense; and (3) that the court overruled defendant's motion for a mistrial because of the incident that occurred with regard to certain witnesses of the defendant who had not been put under the rules of the court and who remained in court listening to the prosecution witnesses.

■■ The defendant had been properly served with notice of the trial that was to be held on March 17, 1942. Nevertheless, when the case was called for trial he was not present. Neither was his attorney. The marshal informed the court that some of the prosecution witnesses had seen the defendant that morning weighing sugar cane in a scale on his own property near Sabana Grande. Attorney Vicente Palés Matos, who had represented the defendant during the arraignment, was questioned and he said: "Your Honor, since the arraignment I have not seen the defendant. I have sent for him on different occasions so that he would bring

me the evidence and he has never come and because of that, and in view of his actions, I consider myself relieved of his representation, unless Your Honor decides otherwise."

In view of the non-appearance of the defendant, the court continued the trial for two o'clock in the afternoon. The judge stated that he had issued an order for the arrest of the defendant and ordered the notification of the bondsmen to show cause why the bail should not be confiscated. One of the bondsmen being there present, having been called to act as a juror in the case, was released of his responsibility as such bondsman by the judge and was asked to cooperate in bringing the defendant to trial.

When the case was called for trial at two o'clock in the afternoon, the marshal said that he had been informed that the defendant was in the Clínica Perea. At that time the district attorney stated that he was surprised by this, that the defendant had not sent any message to the court explaining the reasons he had for not appearing for trial, and the judge stated that he had been informed from the Clínica Perea that the defendant on that day had taken some drug that had affected his stomach and because of that he had to be taken to the clinic at least until next day, when he would be dismissed. The case was postponed for the next day at nine o'clock in the morning and it was ordered that all the witnesses and jurors be served to appear at that time.

Next day the defendant appeared and the court warned him that he had been served to show cause why he should not be punished for contempt for not having appeared the previous day for trial of the criminal case against him. The court asked him if he had an attorney and he answered in the negative. The judge asked the marshal if Attorney Eduardo A. Ruiz was in the court and when the marshal answered in the affirmative, the defendant said: "I do not need a lawyer appointed by the court. I am a taxpayer and I can pay a lawyer. What I need is time to secure one."

The court designated Attorney Ruiz to represent the defendant in the murder charge and ordered a five-minute recess so that the attorney could talk to the defendant with regard to the contempt incident, and at the end of said recess the defendant's counsel stated that he was ready to try the contempt charge, and the district attorney having done likewise, the trial started. Dr. Nelson Perea then testified that the defendant, went to his hospital complaining of pains in the lower part of the abdomen and he examined him and the defendant was hospitalized. The doctor declared that he could not say for certain what was the cause of the abdominal pain, that the same could have been caused by the nervous state of the defendant because of the pending trial; that it could also have been caused by food that he had not digested well. Other witnesses for both the defense and the prosecution, and also the defendant, testified, and the court withheld its decision. During all these incidents the men who where to act as jurors in the case could hear and see what happened. Then the trial for the murder charge was held, and after the verdict, the court acquitted the defendant on the contempt charge.

It was defendant's duty to be present in court on the day set for trial and assuming that the disease that caused his hospitalization in the clinic had not been provoked by him to avoid going to trial, he should have duly advised the court, especially since his brother had taken him early to the clinic and was in court when the session opened. It was natural that the judge would inquire as to whether the defendant was present and that he be indignant when he found out that despite the fact that he was duly summoned he did not appear or give any explanation of his absence. Upon making this investigation, the judge was not bound to exclude the public from the court room so that the probable jurors would not learn of the incident. It was perhaps unnecessary for the judge to express publicly what he had

been advised from the clinic as to the cause of the alleged indisposition of the defendant, but the incident was so extraneous to the murder trial that we fail to see how it could influence the jury's verdict. There is no reason to presume that because a man is called to serve as a juror, his intelligence is impaired in such a manner that the slightest incident with regard to the defendant will prejudice him against the defendant, in disregard of the evidence and the instructions of the court. Likewise, we do not believe that the holding of the contempt trial and the fact that the judge reserved his decision influenced the jury against him, although we believe that it is a better practice to hear such a case for contempt after the trial in the principal case.

We are of the opinion that the first error was not committed.

■■ Under these circumstances, the defendant did not have any right to have the trial postponed until he designated an attorney. Attorney Palés Matos stated that on several occasions he had requested the defendant to come to him with the evidence, and that the defendant had not paid any attention to his requests and because of this he considered himself relieved from the attorney-client relation with the defendant. Furthermore, the defendant was served with plenty of time to engage another attorney if he did not want Attorney Palés Matos to represent him, especially in view of the fact that he himself told the judge that he could afford an attorney. What was said by this court in the case of *People* v. *Montaner*, 61 P.R.R. 116, is entirely applicable here.

"If the defendant were in fact solvent, as the court stated in uncontradicted fashion, it was his duty to be ready at the trial with his attorney, especially when, as the court said, he had been summoned to the hearing fifteen or twenty days in advance. The defendant can not allege that he has been deprived of his right to assistance of counsel. He had ample opportunities to obtain one, and if he chose not to do so as means to secure the continuance of the trial,

no one but himself is to blame and he should suffer, the natural consequences of his bad faith. The constitutional guaranty of assistance of counsel does not require a court to appoint an attorney for defendants who have ample means to pay for such services. Since the defendant was not insolvent, when the court appointed Attorney Córdova Rivera, it did so without being bound to do it. In view of the special circumstances of this case, the court could have held the trial without the defendant being assisted by counsel."

██ The third assignment of error does not merit serious consideration. When the judge was advised that three of the defendant's witnesses were in the court room listening to the testimony of the prosecution witnesses, he asked them if they were eyewitnesses, to which they answered that they did not know anything about the case despite the fact that they had been served. It was logical that the judge should ask them if they were eyewitnesses because they could be reputation witnesses or expert witnesses, in which case their presence in the court room would in no way affect their testimony. After this incident the trial continued and these witnesses were not called to the stand, and afterwards the defendant filed a motion for a mistrial because of the fact that the judge asked said witnesses in the presence of the jury if they were eyewitnesses.

None of the errors assigned existing, the judgments are affirmed.